IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01674-MSK-CBS

TEST SERVICES, INC., a Colorado corporation,
        Plaintiff,
v.

THE PRINCETON REVIEW, INC., a Delaware corporation,
        Defendant.
_____

MEMORANDUM OPINION AND ORDER
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court: (1) for disposition on the merits of the

First through Sixth Causes of Action; and (2) on the "Motion to Dismiss Counts One

through Six of the Complaint" filed on September 18, 2005 by Defendant The Princeton

Review ("TPR") (doc. # 20).  Pursuant to the "Order Bifurcating Claims and Referring

Matters to Magistrate Judge" (filed September 7, 2005) (doc. # 12), the Motion for

Preliminary Injunction filed by Plaintiff Test Services, Inc. ("TSI") (doc. # 2) was

"consolidated with trial on the merits of the First through Sixth Claims for Relief."  By

consent of all the parties, the trial on the merits of the First through Sixth Causes of

Action was "specifically referred to United States Magistrate Judge Craig B. Shaffer for

final disposition pursuant to 28 U.S.C. § 636(c)."  (*See* "Order Bifurcating Claims and

Referring Matters to Magistrate Judge").  In open court on September 27, 2005, TSI

withdrew its request for a jury for the First through Sixth Causes of Action.  On

November 14, 2005, the Magistrate Judge held a trial to the court on the merits of the

1

First through Sixth Causes of Action.  The court has reviewed the entire case file, the evidence in the record, TPR's Motion to Dismiss, TSI's Memorandum in Opposition (filed October 11, 2005) (doc. # 43), TPR's Reply (filed October 27, 2005) (doc. # 52), the evidence and arguments presented at the trial held November 14, 2005, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

TPR is a Delaware corporation based in New York City.  (Declaration of Mark Chernis in Support of Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction ("Chernis Decl.") at ¶ 2).  Founded in 1981 as a company offering SAT preparation courses, TPR has expanded its test preparation services business and is now among the leading providers of test preparation courses for most of the major post-secondary and graduate admissions tests, including the GMAT, MCAT, LSAT, GRE, and other standardized admissions tests.  (Chernis Decl. at ¶ 2).  In the mid-1980's, as part of its original test preparation services business, TPR began franchising "The Princeton Review" name and test preparation system to franchisees in the United States and abroad.  (Chernis Decl. at ¶ 3).

TSI is a Colorado corporation with its headquarters in Denver, Colorado.  In June 1986 TSI became one of TPR's franchisees, operating in the Fairfield, Connecticut and South Florida areas.  (Complaint at ¶ 9).  TSI is now the largest franchisee of TPR, with ten franchise agreements, six of which are at issue in this case. As a franchisee of TPR, TSI offers educational services using a proprietary teaching

2

method, "The Princeton Review Method" ("TPR Method"), licensed from TPR.  TSI

employs over 1,000 employees, operates courses in nearly 200 locations in its

franchise territories, and provides services for approximately 20,000 students annually.

(Complaint at ¶ 7).  The current franchise agreements for TSI's territories in Colorado,

California, Nevada, Michigan, Ohio, and Northern Florida  ("the Expiring Agreements")

will expire on December 31, 2005 unless renewed.  (*See* trial exhibit 1 (Adams, Denver,

Jefferson, Arapahoe, Boulder, Douglas, and El Paso Counties, Colorado), trial exhibit

35 (San Diego County, California), trial exhibit 36 (Clark County, Nevada), trial exhibit

37 (Oakland, Washtenaw, Wayne Counties, Michigan), trial exhibit 38 (Cuyahoga,

Medina, Knox, Ashland Counties, Ohio), and trial exhibit 39 (numerous counties in

Florida)).

   The Expiring Agreements grant TSI

a franchise and license for the term and upon the conditions and terms
hereafter set forth:

   1.  To use the TPR Method in connection with the
   operation of a franchised Princeton Review test preparation
   business at specific, approved site locations . . .

   2.  To use confidential and proprietary educational
   materials, trade secrets and techniques, operating manuals
   and bulletins, and other business methods and know-how
   disclosed by Franchisor, solely in connection with the
   operation of the business conducted at the locations
   heretofore described and in accordance with the terms of
   the Agreement;

   3.  To use Franchisor's proprietary names, marks,
   and methods franchised and licensed hereunder only in the
   above described geographical area . . . ."

(Trial exhibit 1 at I.A.1.).  The Expiring Agreements provide that TSI may renew the license and franchise granted by TPR if certain enumerated conditions are met.

In May 1995, TPR and its domestic franchisees, including TSI, entered into an Addendum to the Expiring Agreements to memorialize the negotiated terms and conditions on which TPR could itself market and sell certain products in franchisees' territories ("1995 Addendum" (trial exhibit 2)).  TPR and the franchisees agreed that any franchise agreement having less than ten years remaining on its term would be extended until December 31, 2005.  The 1995 Addendum specified that the terms and conditions of renewal were not affected.  (Trial exhibit 2 at ¶ 10).

The 1995 Addendum also broadened the mutual noncompete restrictions by expanding the definition of the "TPR Method." (*See* trial exhibit 2 at ¶ 6).  Contemporaneous to the 1995 Addendum, TPR and TSI executed the "Side Letter" (trial exhibit 3).  The Side Letter eliminated the expansion of the definition of the "TPR Method" in the 1995 Addendum and retained the original definition of the "TPR Method" set forth the Expiring Agreements.  (*See* trial exhibit 3 at p. 1).[1]

In May 2003, TPR and its domestic franchisees, including TSI, entered into an additional agreement regarding "Distance Learning/Course Tools/K12 Courses" ("DL Agreement" (trial exhibit 10)).  Under the DL Agreement, TPR agreed, among other things, to compensate its franchisees with a reverse royalty for online students served by TPR in the franchise territories.  The DL Agreement expires on December 31, 2005.  (*See* trial exhibit 10 at ¶ 2).

The Expiring Agreements provide for renewal as follows:

Franchisee shall have the **option to renew the license granted herein** for successive ten (10) year terms provided all of the following conditions have been fulfilled:

1. Franchisee gives written notice to Franchisor of Franchisee's intention to so renew no later than one hundred eighty (180) days, nor earlier than one (1) year, prior to the expiration of this or any renewal term of this Agreement and this Agreement has not otherwise bee previously terminated; and

2. At the schedule date of renewal, there is no pending, uncured default or breach of this Agreement constituting cause for termination under Paragraph XIII, hereof; and

3. Franchisee executes no later than one hundred twenty (120) days prior to the expiration of the term of this Agreement or any renewal or extension hereof a renewal agreement **on the terms and conditions then being offered to new franchisees**, *except that (a) no initial franchise fee shall be payable by Franchisee upon renewal; and (b) periodic payments shall be on no higher percentages nor be payable mor frequently than those provided by this Agreement; and (c) reporting and/or record keeping requirements shall be no more extensive or frequent than those provided by this Agreement.*

4. Franchisee pays an administrative-renewal fee not to exceed Two Thousand Five Hundred Dollars ($2,500.00).

5. Franchise, either in the year immediately preceding the expiration date of the renewal option hereby provided, or on an annual basis averaged over the last three (3) years preceding the expiration date of the renewal option hereby be provided, has made royalty payments to Franchisor of no less than thirty percent (30%) of Franchisee's initial franchise fee hereunder adjusted to correspond with changes in the national consumer/price index or makes a supplemental cash payment in the amount of the difference between actual payments made and the percentage payments provided herein.

(Trial exhibit 1 at pp. 4-5 ¶ I. B.) (emphasis added).  Paragraph I. B. 3. gives TSI three

enumerated exemptions ("ABC Exceptions") from the contract terms then being offered

to new franchisees.

By letter dated January 3, 2005, TSI gave TPR notice of its intention to renew the Expiring Agreements.  (*See* trial exhibit 11).  TPR acknowledged TSI's letter in a reply dated January 11, 2005.  (Trial exhibit 12).  By letter dated May 5, 2005, TPR provided TSI with a copy of TPR's April 25, 2005 Franchise Offering Circular and  a form of franchise agreement entered into by TPR in June 2005 for the Territory of Guam.  (*See* trial exhibit 13 ("Renewal Form" also referred to in testimony as the "Guam Renewal Form") and trial exhibit 18 (Franchise Offering Circular)).  TPR offered renewal agreements to new franchisees and to TSI that were identical to the Renewal Form.  Other domestic franchisees have renewed their franchises under the Renewal Form, with some amendments.  (Chernis Decl. at ¶ 22; *see also* trial exhibits S, T, U, V, W; trial exhibit A1 at pp. 6-7).  Several new franchises have commenced under agreements similar to the Renewal Form.  (*See* Chernis Decl. at ¶ 20; trial exhibits X, Y, Z; trial exhibit A1 at p. 8).

TSI responded to TPR that it wishes to renew under the original terms of the Expiring Agreements, as amended, rather than under the terms of the Renewal Form. TSI has declined to sign the Renewal Form, insisting that it is entitled to renew under the original terms of the Expiring Agreements.  TSI contends that TPR has failed to provide TSI a renewal agreement that complies with the renewal provisions of the Expiring Agreements.  Notwithstanding, whatever the outcome of the trial on the First through Sixth Causes of Action, TSI intends to renew its franchises with TPR. (Declaration of Julie R. Smith in Support of Plaintiff's Motion for Preliminary Injunction ("Smith Decl.") at ¶¶ 6, 7).

TSI initiated this civil action on or about August 29, 2005.  TSI alleges, among other things, that TPR is in breach of the Expiring Agreements by requiring TSI to enter into renewal agreements that substantially narrow the scope of rights and services licensed by TPR to TSI and by failing to comply with the terms of the Expiring Agreements.  TSI seeks declaratory and injunctive relief and specific performance to compel TPR to comply with the terms of the Expiring Agreements.  TSI also seeks damages for breach of TPR's contractual obligations to TSI.  (*See* Complaint at pp. 46-50).  TSI's First through Sixth Causes of Action include: (1) breach of contract and injunctive relief for breach of subparts b. and c. of paragraph I.B.3. of the Expiring Agreements; (2) breach of contract and of the covenant of good faith and fair dealing for breach of paragraph I.B. of the Expiring Agreements; (3) declaratory judgment regarding the scope of the term "license granted herein" in paragraph I.B. of the Expiring Agreements; (4) declaratory judgment that the February 1998 Hartford, Connecticut Agreement ("Hartford Agreement" (trial exhibit 7)) is the proper renewal form agreement; (5) in the alternative, declaratory judgment that the license granted by the Expiring Agreements and the terms and conditions of the Renewal Form, subject to the ABC Exceptions and the covenant of good faith and fair dealing, constitute the renewal agreement; and (6) anticipatory breach of contract and constructive termination.  (Complaint at pp. 30-37).

II.     Standard of Review

It is undisputed that pursuant to the choice of law provision, the Expiring

Agreements are to be interpreted under New York law.  (*See* trial exhibit 1 at  ¶ XVI. G.,

p. 36).  Under New York law, "[w]hen considering the construction of a contract, the

court should accord that language its plain meaning giving due consideration to the

surrounding circumstances [and] apparent purpose which the parties sought to

accomplish."  *OnBank & Trust Co. v. F.D.I.C.*, 967 F. Supp. 81, 90 (W.D.N.Y. 1997)

(internal quotation marks and citation omitted).  "Only where the language at issue is

unambiguous may the court construe it as a matter of law."  *OnBank*, 967 F. Supp. at

90 (citations omitted).  "Whether an ambiguity exists in a contract is a question of law to

be resolved by the Court."  *OnBank*, 967 F. Supp. at 90 (citations omitted).  *See also*

*Briarwood Towers 85th Company v. Guterman*, 136 A.D. 2d 456, 458 (N.Y.A.D. 1988)

(citations omitted) ("[i]n the absence of ambiguity which obscures the intentions of the

parties to a contract, the interpretation of a contract and the obligations of the parties

thereto are questions of law and not of fact").

"New York law thus expresses a strong commercial policy for the plain meaning

rule of contract interpretation; that which is stated clearly is to be applied clearly."

*International Multifoods Corp. v. Commercial Union Insurance Company*, 98 F. Supp.

2d 498, 503 (S.D.N.Y. 2000).  This policy "favors predictability in the interpretation of

commercial writings. If parties are properly to structure and plan their commercial

activities, they must be able to rely upon the plain language of the agreements they

sign."  *International Multifoods*, 98 F. Supp. 2d at 503.  "A written contract binds future

generations of officers and employees, as well as those who took part in its making."

*International Multifoods*, 98 F. Supp. 2d at 503.

"A term is unambiguous when it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *OnBank*, 967 F. Supp. at 90 (citations omitted). "Plain language does not become ambiguous simply by virtue of the parties' differing interpretations." *OnBank*, 967 F. Supp. at 90 (citations omitted). *See also Seiden Assocs. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir. 1992) ("contract is not made ambiguous because each party urges a different interpretation"). A court "should not, under the guise of contract interpretation, imply a term which the parties themselves failed to insert or otherwise rewrite the contract." *Charter Realty & Development Corp. v. New Roc Assocs. L.P.,* 293 A.D.2d 438, 439, 739 N.Y.S. 2d 456, 457 (N.Y.A.D. 2002) (internal quotation marks and citations omitted). *See also Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) (given agreement by the parties, courts should not change terms).

In reviewing a Rule 12(b)(6) motion to dismiss, the district court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir.2001). "A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Benefield*, 241 F.3d at 1270 (quotations and citations omitted). "The Second Circuit has made it clear, however, that if the contract is found to be ambiguous, a motion for summary judgment--much less a motion to dismiss--on a breach of contract claim is improper." *OnBank*, 967 F. Supp. at 90 (citations omitted).

9

*See also Martin Marietta Corp. v. International Telecommunications Satellite Org.*, 991 F.2d 94, 97 (4th Cir.1992) ("the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim"); *Lipsky v. Com. United Corp.*, 551 F.2d 887, 897 (2d Cir.1976) (reversing district court's decision to grant motion to dismiss where contract term ambiguous).


III.    Analysis

Initially, the language in the Expiring Agreements appeared to the court sufficiently susceptible of more than one interpretation to preclude determination of the Motion to Dismiss in TPR's favor.  Without conclusively deciding that the contract provisions at issue were ambiguous, the court heard evidence extrinsic to the agreement to determine the intention of the parties.  *See Winston v. Mezzanine Investments, L.P.*, 648 N.Y.S. 2d 493, 499 (N.Y. Sup. 1996) ("if a contract provision is reasonably susceptible of more than one interpretation, facts and circumstances extrinsic to the agreement can be considered to determine the intention of the parties") (citations omitted).  After reviewing all of the evidence, the court concludes that the parties' conduct over the years of their business association is consistent with the plain language of the Expiring Agreements.  Thus, "effect must be given to the intent as indicated by the language used." *International Klafter Company, Inc. v. Continental Casualty Company, Inc.*, 869 F.2d 96, 99 (2d Cir. 1989) (internal quotation marks and citation omitted).

10

A.      Breach of Expiring Agreements

It is undisputed that the terms of the Renewal Form provide a different grant of license than that provided in the Expiring Agreements.  (*See* trial exhibit 13 at ¶ 2; Smith Decl. at ¶¶ 23-24; trial testimony of Julie Smith).  For example, the Renewal Form limits the license to live test preparation for college and graduate school admissions tests and nothing else.  (*See* trial exhibit 13 at ¶ 2).  The Renewal Form restricts TSI's ability to market and provide TPR products and services, thereby limiting TSI's access to a significant area of growth in the educational marketplace.  (*See* Smith Decl. at ¶ 26;  trial exhibit 18 at pp. 1 and 19).

The Expiring Agreements state that "Franchisee shall have the option to renew the license granted herein for successive ten (10) year terms provided" five conditions have been fulfilled.  (*See* trial exhibit 1 at ¶ I. B. 1. through 5.).  It is undisputed that TSI has met conditions 1, 2, 4, and 5 of paragraph I. B.  This dispute focuses on condition 3.  TSI claims that the provision limiting any renewal agreement to the terms and conditions "then being offered to new franchisees" cannot reduce the license granted to TSI in the Expiring Agreements.  TSI argues that its "option to renew the license granted herein" entitles it to continue to offer any service that it was authorized to provide under the Expiring Agreements, as amended.  For example, TSI contends that the Renewal Form eliminates its exclusive right to market new courses using The Princeton Review mark.  Pursuant to the provisions of the Renewal Form, TPR retains for itself the right to offer and sell new courses.  TSI asserts that this exclusive right is granted to it by the term "option to renew *the license granted herein*" in paragraph I.B.

11

of the Expiring Agreements.  (Emphasis added).  The court concludes that TSI's

arguments are unsupported by the evidence or the plain language of the Expiring

Agreements.

The plain meaning of paragraph I. B. of the Expiring Agreements is that TSI's

"franchise and license" may be renewed if the conditions set forth are met.  One of the

express conditions is that TSI enter into a renewal agreement "on the terms and

conditions then being offered to new franchisees." (Trial exhibit 1 at ¶ I.B.3.).  The

Expiring Agreements contained only three exceptions, identified in ¶ I. B. 3. (ABC

Exceptions), that applied to TSI.  There is no provision in the Expiring Agreements that

preserves any other terms or conditions for TSI as opposed to new franchisees.  Other

than the ABC Exceptions, the terms and conditions of the Renewal Form are those

"then being offered to new franchisees."  Renewal of the contractual relationship

between TSI and TPR is conditioned upon execution of the Renewal Form.

The construction of the Expiring Agreements that TSI proposes is contrary to

contract law.  "It is a recognized rule of construction that a court should not adopt an

interpretation which will operate to leave a provision of a contract . . . without force and

effect." *Ruttenberg v. Davidge Data Systems Corp.*, 215 A.D.2d 191, 196, 626 N.Y.S.

2d 174, 177-78 (N.Y.A.D. 1995) (internal quotation marks and citations omitted).  "An

interpretation that gives effect to all the terms of an agreement is preferable to one that

ignores terms or accords them an unreasonable interpretation." *Ruttenberg*, 215

A.D.2d at 196, 626 N.Y.S. 2d at 177-78 (citations omitted).  TSI's construction of the

Expiring Agreements would nullify the condition that TSI enter into renewal agreements

containing the "terms and conditions then being offered to new franchisees." (*See* trial exhibit 1 at ¶ I. B. 3.).  The interpretation of the Expiring Agreements proposed by TSI is inconsistent with "the rule of construction that a contract shall be read so as to give effect to each and every term" and is untenable as a matter of law. *Ruttenberg*, 215 A.D.2d at 196, 626 N.Y.S. 2d at 178.

The Expiring Agreements, as amended, reflect a meeting of the minds between sophisticated business entities.  The Chairman of TSI's parent company understood that TSI's option to renew created no obligation to continue under the franchise agreements after the first 10-year term.  (Trial testimony of Kirk Riedinger).  While Riedinger did not expect the extent of the changes to the Expiring Agreements that appeared in the Renewal Form, he was aware that the terms and conditions of the Expiring Agreements could change.  TPR had legitimate business reasons for reserving its right to make changes in the terms and conditions of the Expiring Agreements.  (*See* Chernis Decl. at ¶¶ 8-9).

TSI next argues that the words "renew" and "renewal" in the Expiring Agreements must be given effect.  "Black's Law Dictionary defines 'renewal' to include the 'substitution of a new right or obligation for another of the same nature.' " *In re Capelli*, 261 B.R. 81, 87 (D. Conn. 2001) (quoting Black's Law Dictionary 1165 (6th ed.1990)).

> Generally an option to renew a contract is the right to require the
> execution of a new contract while an option to extend the term merely
> operates to extend the term of the original agreement.  Renewal and
> extension are closely related concepts to one another, normally involving
> a continuation of the contractual relationship on essentially the same

> terms and conditions as contained in the original contract.  Whether a renewal creates a new contract, or extends the original contract, depends primarily on the intention of the parties.

17B C.J.S. § 500 (2005).  The renewal provision here does not expressly require the continuation of the contractual relationship on the exact same terms and conditions as contained in the original Expiring Agreements.  Rather, it provides for a new and different contract with three enumerated exceptions that apply to TSI.  (*See* trial exhibit 1 at ¶ I. B. 3. (a), (b), and (c)).

Nor do the definitions of a license or a franchise support TSI's position that the Expiring Agreements granted TSI an exclusive renewable license.  "A license is a right or permission to carry on a business or to do an act which, without such license, would be illegal."  *Sea Lar Trading Co., Inc., v. Michael*, 433 N.Y.S.2d 403, 406 (N.Y. Sup. 1980) (citation omitted).  "A franchise is similar to a license, in that it is a grant of power, or permission, to do certain acts which could not be done without the franchise. The business carried on, or the acts done, are essentially for the economic benefit of the licensee or franchisee, who is considered a principal in his relationship to third persons."  *Sea Lar*, 433 N.Y.S.2d at 406.  New York's Franchise Sales Act defines a franchise as follows:

> 3.      "Franchise" means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:
>
> (a) a franchise is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor, and the franchisee is required to pay, directly, or indirectly, a franchise fee, or
>
> (b) a franchisee is granted the right to engage in the business of offering,

14

selling, or distributing goods or services substantially associated with the franchisor's trademark, service mark, tradename, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate, and the franchisee is required to pay, directly or indirectly, a franchise fee.

N. Y. Gen. Bus. Law § 681(3).   "Although a franchise is frequently referred to as a license it also involves a contract with the franchisee."   *Matarazzo v. Friendly Ice Cream Corp.*, 70 F.R.D. 556, 559 (E.D. N.Y. 1976).   A franchisee "must perform according to the judgment, rules, regulations, methods and guidelines of the franchisor."   *Matarazzo*, 70 F.R.D. at 559.   The court finds nothing in the definitions of a franchise or a license that supports TSI's assertion that it has an exclusive license that cannot be altered by the Renewal Form.

TSI further asserts that the term "new franchisees" in paragraph I.B. 3. of the Expiring Agreements should be limited to franchisees in the United States.   Based on this limitation on the term "new franchisees," TSI argues that the "terms and conditions then being offered to new franchisees" are governed by the Hartford Agreement, the most recent franchise agreement offered to a domestic franchisee.   (*See* trial exhibit 7). No distinction between domestic and foreign franchisees is made in the Expiring Agreements.   No express language in the Expiring Agreements supports such a limitation on the term "new franchisees."   Even if a distinction were made in the Expiring Agreements, the evidence shows that in October 2005, a domestic franchisee was offered and executed a franchise agreement with terms and conditions identical to the Renewal Form.   (*See* trial exhibit X).   Neither the plain language of the Expiring Agreements nor the evidence supports TSI's proposed limitation for the term "new

franchisees."

TSI argues that the schedule for renewal entitles TSI to a renewal agreement that contains substantially the same terms and conditions as the Expiring Agreements. The Expiring Agreements require TSI to give "written notice to Franchisor of Franchisee's intention to so renew no later than one hundred eighty (180) days, nor earlier than one (1) year, prior to the expiration of this or any renewal term of this Agreement . . . ." (Trial exhibit 1 at ¶ I. B. 1.). TSI argues that this schedule supports its interpretation of the Expiring Agreements because TSI cannot know what it is agreeing to at the time it must give TPR notice of its intent to renew. The court finds this argument unpersuasive because, by providing initial notice, TSI does not bind itself. Initial notice merely activates TPR's obligation to present a "renewal agreement on the terms and conditions then being offered to new franchisees." (Trial exhibit 1 at ¶ I. B. 3.). TSI remains free not to execute a renewal agreement. This schedule would not be necessary if the parties intended TSI to operate under the identical terms and conditions of the Expiring Agreements. The schedule provision does not support TSI's claim that it is entitled to a renewal agreement containing the same terms and conditions as the Expiring Agreements.

TSI also argues that the Renewal Form violates paragraph I. B. of the Expiring Agreements because it does not allow for additional 10-year renewal terms. However, pursuant to paragraph 16.2 of the Renewal Form, "[i]f this agreement is being signed in connection with the renewal or transfer of an existing franchise, Franchise[e] shall have such further renewal periods, if any, as Franchise[e] would have had if the prior

16

Franchise Agreement continued in effect." (Trial exhibit 13 at ¶ 16.2). TPR concedes

that as to TSI the renewal agreement includes a 10-year term and 10-year renewal

option.


B.     Reformation of Renewal Form

As an alternate theory, TSI seeks reformation of certain provisions of the

Renewal Form. TSI argues that the Renewal Form violates the ABC Exceptions to the

Expiring Agreements. Pursuant to the ABC Exceptions, unlike new franchisees, TSI is

not obligated to pay the $50,000.00 initial franchise fee and its royalty percentages are

fixed by the terms of the Expiring Agreements, irrespective of the amounts agreed to by

new franchisees. Further, TPR cannot refuse to enter into a renewal agreement with

TSI as long as TSI satisfies all of the conditions for renewal set forth in the Expiring

Agreements.

First, TSI asserts that the Renewal Form violates  ¶ I. B. 3. (b) of the Expiring

Agreements - - that "periodic payments shall be of no higher percentages nor be

payable more frequently than those provided by this Agreement." (*See* trial exhibit 1 at

¶ I.B. 3. (b)). The Expiring Agreements contain only three periodic payments that are

expressed in percentages: the Royalty-Service Fee (8%), the Advertising-Promotion

Fee (2%), and the interest charges on late payments (18%). (Trial exhibit 1 at pp. 7-

12). The percentages for these fees are unchanged in the Renewal Form. (Chernis

Decl. at ¶ 24; *see also* trial exhibit 13 at ¶¶ 8.2, 8.3, and 8.9). The specific limitations

on the percentage rates of periodic payments do not constitute a general prohibition on

17

any change in fees.  TSI argues that the Renewal Form's provisions requiring an

"Online Tools Fee," a "Student Transfer Fee," and a "Reserve Requirement" violate ¶ I.

B. 3. (b).  (*See* Complaint at ¶ 55; TSI's Memorandum in Support of Motion for

Temporary Restraining Order and Preliminary Injunction at p. 14; Smith Decl. at ¶ 32;

trial exhibit 13 at ¶¶ 8.4, 8.5, and 8.8).  TSI contracted to pay the Online Tools Fee in

the DL Agreement and contracted to pay the Student Transfer Fee in the 1995

Addendum.  (*See* trial exhibit 10 at ¶ 4; trial exhibit F1 at ¶ 4 and Attachment 1; Chernis

Decl. at ¶ 26).  The Reserve Requirement expressly does not apply to franchisees such

as TSI who are renewing an existing franchise agreement.  (*See* trial exhibit 13 at ¶

8.8.4).  TPR agreed to waive the Minimum Royalty provision in the Renewal Form,

conceding that it violated paragraph I. B. 3. (b) of the Expiring Agreements.  (Trial

Exhibit 13 at ¶ 8.6; trial exhibit B1 at p. 2; trial testimony of Mark Chernis; Smith Decl. at

¶ 33).

At trial, TSI further argued that the Renewal Form's provisions requiring

"Advertising Expenditures," "Delinquency," "Taxes," "Delinquent Reports," and a

franchise transfer fee violate ¶ I. B. 3. (b).  (*See* trial exhibit 13 at ¶¶ 7.2, 8.9, 8.10, 9.8,

and 14.1.3; trial testimony of Julie Smith; demonstrative exhibit 43).  Neither advertising

expenses, late fees, nor taxes are periodic payments to TPR within the scope of ¶ I. B.

3. (b).  (*See* trial exhibit 13 at ¶¶ 7.2, 8.9, 8.10; trial testimony of Mark Chernis).  The

Delinquent Reports constitute a new fee, not a periodic fee, and the fee due upon

transfer is a one-time fee.  (*See* trial exhibit 13 at ¶¶ 9.8, 14.1.3; trial testimony of Mark

Chernis). The contested fees are not "periodic payments" or "percentages" within the

scope of ¶ I. B. 3. (b).

TSI further contends that the Renewal Form's record keeping and reporting requirements are more extensive than those contained in the Expiring Agreements, in violation of ¶ I. B. 3. (c).  (*See* Complaint at ¶ 57; TSI's Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction at p. 14; Smith Decl. at ¶ 34; trial exhibit 13 at ¶¶ 9.1 and 9.5).  TSI has not proven its allegations that paragraph 9.1 of the Renewal Form imposes reporting and record keeping requirements for which there are no comparable requirements in the Expiring Franchise Agreements.  (*See* trial testimony of Mark Chernis).  Paragraph 9.5 of the Renewal Form sets forth TPR's rights to examine or audit a franchisee's books and records, but does not impose more extensive reporting or record keeping requirements on the franchisee.  (*See* trial exhibit 13 at ¶ 9.5).

At trial, TSI further argued that the Renewal Form's provisions requiring "Advertising Expenditures," "Financial Statements," "Reports," and "Delinquent Reports" violate ¶ I. B. 3. (c).  (*See* trial exhibit 13 at ¶¶ 7.2, 9.4, 9.7, and 9.8; trial testimony of Julie Smith; demonstrative exhibit 43).  TPR agreed to waive the Financial Statements provision in the Renewal Form.  (Trial exhibit B1 at p. 2; trial testimony of Mark Chernis; Smith Decl. at ¶ 33).  Advertising expenses and reports accompanying payments do not impose reporting and record keeping in violation of ¶ I.B. 3. (c).  (*See* trial exhibit 13 at ¶¶ 7.2, 9.8; trial testimony of Mark Chernis).

In sum, the court finds that the Renewal Form is not in violation of the ABC Exceptions.

19

IV.   Conclusion

As it must, the court has considered the provisions of the contract as a whole, looking "to all corners of the document," rather than viewing sentences or clause in isolation. *International Klafter Co.*, 869 F.2d at 99 (citation omitted).  The Expiring Agreements expressly permit TPR to renew TSI's franchises on terms and conditions that are different than those granted in the Expiring Agreements, so long as at the time of renewal the terms and conditions offered to TSI are the same terms and conditions that are being offered to new franchisees.  TSI's First Cause of Action for breach of paragraph I. B. 3. (b) and (c) of the Expiring Agreements, Third Cause of Action for declaratory judgment on paragraph I. B. of the Expiring Agreements, Fourth Cause of Action for declaratory relief that the Hartford Agreement sets forth the terms and conditions "then being offered to new franchisees," Fifth Cause of Action for reformation of the Renewal Form, and Sixth Cause of Action for anticipatory breach and constructive termination all fail because they are grounded on untenable arguments that TPR improperly altered the scope of TSI's license and franchise.

As an alternative means of seeking contract damages, TSI asserts that TPR breached the covenant of good faith and fair dealing.  (Complaint at ¶¶ 97-103).  New York law recognizes that the covenant of good faith and fair dealing is implied in all contracts to effectuate their terms.  *Dalton v. Educational Testing Service*, 87 N.Y. 2d 384, 389, 639 N.Y.S. 2d 977, 979 (N.Y. 1995) (citation omitted).  "The implied covenant of good faith encompasses any promises which a reasonable person in the position of the promisee would be justified in understanding were included in the agreement, and

20

prohibits either party from doing anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *1-10 Industry Associates, LLC v. Trim Corp. of America*, 747 N.Y.S. 2d 29, 31 (N.Y.A.D. 2002) (internal quotation marks and citations omitted).  "The duty of good faith and fair dealing, however, is not without limits, and no obligation can be implied that would be inconsistent with other terms of the contractual relationship." *Dalton*, 87 N.Y. 2d at 979-80 (internal quotation marks and citation omitted).

"[A] breach of an implied covenant of good faith and fair dealing is intrinsically tied to the damages allegedly resulting from a breach of the contract." *Canstar v. J.A. Jones Const. Co.*, 212 A.D. 2d 452, 453, 622 N.Y.S. 2d 730 (N.Y.A.D. 1 Dept. 1995). Where there is no breach of an express covenant in a contract, there can be no cause of action for breach of a covenant arising therefrom. *See Skillgames, LLC v. Brody*, 1 A.D. 3d 247, 252, 767 N.Y.S. 2d 418 (N.Y.A.D. 1 Dept. 2003) (citations omitted).  *See also Lawrence v. CB Richard Ellis, Inc.*, 794 N.Y.S. 2d 774, 775 (N.Y. Sup. App. Term 2005) ("[a] claim for breach of the implied covenant of good faith and fair dealing cannot substitute for an unsustainable breach of contract claim").  The court has concluded that a breach of contract did not occur in the instant case between TPR and TSI; having so concluded, there can be no breach of the covenant of good faith and fair dealing and TSI's Second Cause of Action fails.

The court commends counsel for both parties for their excellent presentations of the legal arguments and the evidence.  The court is compelled to conclude that TSI's First through Sixth Causes of Action are unsupported pursuant to the terms of the very

contracts upon which TSI relies.  Accordingly,

  IT IS ORDERED that TPR's "Motion to Dismiss Counts One through Six of the Complaint" (filed September 18, 2005) (doc. # 20) is GRANTED and Claims One through Six of the Complaint are DISMISSED.

DATED at Denver, Colorado, this 29th day of November, 2005.

BY THE COURT:


s/Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge

1.      While at one time TSI had challenged whether the Side Letter was in effect, at trial TSI conceded that the Side Letter is in effect.